

FILED & ENTERED

DEC 08 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**<u>NOT FOR PUBLICATION</u>**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:11-bk-35816-RK |
| **JOHN CHUN SUH and INSIL SUH,** | Chapter 7 |
| Debtors. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL ON ORDER TO SHOW CAUSE WHY CREDITOR BENJAMIN PARK AND HIS ATTORNEY, JOHN H. OH, SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION** |

This bankruptcy case came on for trial before the undersigned United States Bankruptcy Judge on August 11, 2016 on the contested matter of the order to show cause why creditor Benjamin Park and his attorney, John H. Oh, should not be held in contempt for violating the automatic stay arising in this Chapter 7 bankruptcy case and the discharge injunction entered in this case.  Order to Show Cause, Electronic Case Filing No. ("ECF") 35, filed and entered on April 5, 2016.  Jaenam J. Coe, of the Law Offices of Jaenam Coe, PC, appeared for Debtor John Chun Suh ("Debtor" or "Suh").  John H. Oh, of the Law Offices of John H. Oh and Associates, appeared for Creditor Benjamin Park ("Creditor" or "Park") and for himself.

Having considered the evidence admitted at trial, including the testimony of the

witnesses, the oral and written arguments of the parties, and the other papers and

pleadings filed in this matter, the court makes the following findings of fact and

conclusions of law for this contested matter pursuant to Rules 7052 and 9014 of the

Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil

Procedure.[1]

## **FINDINGS OF FACT**

1.  Debtor and his spouse, Insil Suh, commenced this bankruptcy case when they jointly

    filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11

    U.S.C., on June 15, 2011.  Petition, ECF 1.  Debtor's spouse, Insil Suh, the joint

    debtor in this bankruptcy case, is not involved in this contested matter.  Debtor John

    Chun Suh's Motion for Order to Show Cause Why Benjamin Park and Should Not

    Be Held in Contempt of Court for Violation of the Automatic Stay and Discharge

    Injunctions, ECF 32, filed on March 21, 2016 (only Debtor John Chun Suh was listed

    as the movant); Order to Show Cause, ECF 35.  The court entered a discharge of

    debt in this bankruptcy case on October 18, 2011.  Discharge of Debtor(s), ECF 21,

    filed and entered on October 18, 2011.  This case was a "no asset" Chapter 7

    bankruptcy case, which was closed on October 26, 2011.  Order Closing Case, ECF

    23, filed and entered on October 26, 2011; Chapter 7 Trustee's Report of No

    Distribution, docketed on August 30, 2011.

2.  According to Debtor, Debtor has been a pastor of financially struggling churches.

    Declaration of John J. Suh, ¶ 3 at 1, Debtor's First-Amended Motion for an Order to

    Show Cause Why Creditor Benjamin Park and His Attorney Should Not be Held in

    Contempt of Court for Violation of the Automatic Stay and Discharge Injunction

---

[1]  Any findings of fact that should be properly characterized as conclusions of law will be considered as such, and any conclusions of law that should be properly characterized as findings of fact will be considered such.

("Debtor's First Amended Motion"), ECF 42, filed on June 1, 2016.  In August 2010, Debtor borrowed $50,000 to support his church operation from Creditor Benjamin Park.  *Id.*

3.  According to Debtor, the loan check came from Danny Chung, who told Debtor that he managed some of Mr. Park's assets and that Debtor should repay the loan to Mr. Park.  *Id.*  Also, according to Debtor, the loan Debtor took was for his church's operations, but Debtor orally agreed that he would be personally responsible for the loan debt.  *Id.*

4.  Debtor further testified that his personal finances suffered while trying to assist his church, and thus, Debtor had to file for personal bankruptcy in 2011.  *Id.,* ¶ 4.

5.  Creditor collected payments from Debtor after the discharge was entered in this bankruptcy case.  *Id.*  Debtor testified that he had "been giving my paychecks issued to Mr. Park, and the total amount I paid after the Discharge is about $26,500. Because I was being harassed for payments, there were more checks, some of which bounced, but these are the checks that have actually cleared.  Copies of the front and back of the payment checks to Mr. Park, which have been actually cleared are annexed collectively as Exhibit 2."  *Id.,* ¶ 7 and Exhibit 2 attached thereto.

6.  According to Debtor, Debtor "ha[s] been harassed by Mr. Park, in multitudes of ways, including disparaging remarks made to me and my acquaintances, as well as my congregation—all for the purposes of collecting money from me", and "Mr. Park even sent some man claiming to be a 'collector' to our church".  *Id.,* ¶¶ 4-5.

7.  In his trial declaration, Debtor gave his explanation why he made payments to Creditor on the loan as follows: "I have been making payments [to Mr. Park on the loan] after the discharge of my bankruptcy because I did not understand that even if I did not list the Loan it was discharged so long as it was a pre-petition debt."  *Id.,* ¶ 7.  Debtor further explained: "I was afraid of being sued, and have been making

payments whenever I could", but Creditor "nonetheless sued me in the State Court." *Id.,* ¶ 6.

8. In his trial declaration, Debtor claimed: "Benjamin Park has been collecting payments for the Loan after the discharge of my Bankruptcy, quite forcefully against my will." *Id.,* ¶ 4.

9. According to Debtor, "[t]hese payments, as I now understand, were illegally collected from me by the creditor, through illegal collection activities, and I want them to be returned to me, in addition to any reimbursement of attorney's fees and costs." *Id.,* ¶ 8.

10. In support of his claims, Debtor has offered copies of cancelled checks payable to Creditor, Benjamin Park, as evidence of the payments made on the discharged loan that Creditor made to Debtor. The court received many of the copies of the cancelled checks into evidence over the objection of Creditor as Creditor did not dispute that Creditor received payments of the loan on behalf of Debtor and some of the copies of the checks themselves show the endorsement by Creditor. However, the court sustained Creditor's objections to some of the copies of the cancelled checks because Debtor did not submit complete copies of the checks, that is, some of the check backs were missing, and thus, it is not clear that these checks were negotiated. The cancelled checks received into evidence show that Creditor collected payments in 2012 and 2013 on the prepetition loan that Creditor made to Debtor in August 2010 after Debtor filed his bankruptcy case and the discharge was entered in the case in October 2011. Exhibit 2 to Debtor's First Amended Motion.

11. The checks representing payments on the loan to Debtor by Creditor were not drawn on a bank account in Debtor's name as Debtor stated at trial that he did not have any bank account in his name, but were drawn on bank accounts in the names of others, Korean American First Presbyterian Church and Bethlehem Presbyterian Church, which Debtor testified were his churches, that is, the churches which

4

employed him as their pastor.  According to Debtor, the churches issued checks to

pay his loan debt owed to Creditor because the amounts on the checks were from

his salary or compensation from them as their pastor.  *Trial Testimony of John Chun*

*Suh*, August 11, 2016 at 9:30-9:32 a.m. and 9:41 a.m.; Exhibit 2 to Debtor's First

Amended Motion.

12. Debtor offered copies of checks showing his alleged payments of the loan made by

Park to him, payable to Mr. Park (either Mr. Park, Mr. Ben Park or Mr. Park Ben) in

Debtor's First Amended Motion, Exhibit 2.  Declaration of John Chun Suh, ¶ 7,

Debtor's First Amended Motion; *Trial Testimony of John Chun Suh,* August 11, 2016

at 9:30-9:35 a.m.  These alleged payments are set forth below:

Loan Repayment

| Transaction Date/Amount | Reference |
| --- | --- |
| 2/4/13 - $1,500.00 | Bethlehem Presbyterian Church (BPC) check 2947 dated 1/25/12 |
| 3/4/13 - $1,500.00 | BPC check 2948 dated 2/25/12 |
| 3/26/13 - $1,500.00 | BPC check 2949 dated 3/25/12 |
| 4/1/13 - $1,500.00 (Not Sufficient Funds (NSF)) | BPC check 2949 dated 3/25/12 |
| 5/1/13 - $1,500.00 | BPC check 2950 dated 4/25/12 |
| 1/24/14 - $1,000.00 (No Endorsement (NoE)) | Korean American First Presbyterian Church ("KAPC") check 1062 dated 1/10/13 |
| 2/11/14 - $1,000.00 (NoE) | KAPC check 1063 dated 2/10/13 |
| 3/31/14 - $1,000.00 (NSF) | KAPC check 1064 dated 3/10/13 |
| 7/10/14 - $1,000.00 (NoE) | KAPC check 1066 dated 5/10/13 |
| 8/18/14 - $1,000.00 (NoE) | KAPC check 1067 dated 6/10/13 |
| 8/19/14 - $1,000.00 (NoE) | KAPC check 1068 dated 7/10/13 |

| 8/19/14 - $1,000.00 (NoE) | KAPC check 1069 dated 8/10/13 |
| 12/28/12 - $1,500.00 | BPC check 2945 dated 11/25/12 |
| 1/16/13 - $1,500.00 | BPC check 2946 dated 12/15/12 |
| 5/1/12 - $1,500.00 (Exhibit withdrawn (WD)) | BPC check 2819 dated 4/30/12 (payable to Cash) |
| 8/30/12 - $1,500.00 | BPC check 2942 dated 8/25/12 |
| 11/20/12 - $1,500.00 | BPC check 2943 dated 9/25/12 |
| 11/20/12 - $1,500.00 | BPC check 2944 dated 10/25/12 |
| 8/13/12 - $1,500.00 (WD) | BPC check 2964 dated 8/10/12 (payable to Cash) |
| 11/23/12 - $1,500.00 | BPC check 2942 dated 8/25/12 |

Declaration of John J. Suh, ¶ 7, Debtor's First Amended Motion and Exhibit 2 attached thereto.

13. By the court's calculation, after an examination of copies of checks, included as Exhibit 2 to Debtor's First Amended Motion, it appears that Creditor has collected a total of $13,500 in payments made on behalf of Debtor on the loan Creditor made to Debtor based on checks that end in numbers 2942-2944 and 2945-2950.  In its calculation, the court does not include amounts from checks which have been withdrawn as exhibits, checks noted as NSF, checks payable to "Cash" (which do not indicate that Creditor was the payee absent other proof) and checks for which there is no proof of endorsement by the payee to show that the checks were negotiated and paid.  This means the total repayment on the loan was $13,500 based on the copies of cancelled checks in evidence.

14. As indicated by the bankruptcy petition and schedules filed in this case, which the court takes judicial notice of pursuant to Federal Rule of Evidence 201, Debtor and his joint debtor spouse did not list Creditor or the loan debt on the petition and

schedules.  That is, Mr. Park was not listed as a creditor on the petition and

schedules, nor was the debt that Debtor owed to Mr. Park for the loan listed as a

debt on the petition and schedules.  Petition, ECF 1; Amendment to List of Creditors,

ECF 16, filed on August 30, 2011 (adding secured creditor Morgan Stanley to the list

of creditors); Amended Schedules, ECF 17, filed on September 28, 2011.

15. When the discharge was entered in this bankruptcy case, Creditor was not notified

of the entry of discharge because he was not listed on the bankruptcy petition and

schedules as a creditor, nor was his claim listed on the petition and schedules, and

thus, he was not listed on the creditors' mailing matrix to be given notice of the entry

of discharge.  *Id.;* Discharge of Debtor(s), ECF 21, filed and entered on October 18,

2011; Bankruptcy Noticing Center (BNC) Certificate of Notice of Discharge of

Debtor(s), ECF 22, filed and entered on October 20, 2011;, Mailing Matrix on Case

No. 2:11-bk-35816, available through the court's Case Management and Electronic

Case Filing (CM/ECF) system.

16. On August 18, 2015, Creditor commenced an action against Debtor in the Superior

Court of California, County of Los Angeles, by filing a complaint for breach of oral

contract, common count (money lent), claim and delivery, and negligent

misrepresentation.  Complaint, *Benjamin Park v. Jong Chun Suh, et al.*, No. BC

591701 (Superior Court of California, County of Los Angeles) (this lawsuit referred to

herein as the "State Court Action."), Exhibit 1 to Debtor's First Amended Motion.

17. The complaint in the State Court Action was filed on behalf of Creditor by John H.

Oh, of the Law Offices of John H. Oh & Associates.  *Id.*

18. On September 17, 2015, Debtor by his counsel, Jaenam Coe, of the Law Offices of

Jaenam Coe, PC, filed a Notice of Stay of Proceedings in the State Court Action.

*Id.,* Exhibit 3.  The Notice of Stay of Proceedings indicated that the reason for the

stay was the automatic stay caused by a filing in another court.  Attached to the

Notice of Stay of Proceedings was a copy of the Discharge of Debtor in this

bankruptcy case, dated October 18, 2011.  The proof of service of the Notice of Stay of Proceedings indicated that service was made by mail on John H. Oh, Esq., Law Offices of John H. Oh & Associates, on behalf of Creditor.  *Id.*

19. Debtor admitted in his First Amended Motion for contempt that Creditor did not learn of Debtor's bankruptcy case and discharge until September 17, 2015 when Debtor filed the Notice of Stay of Proceedings in the State Court Action, stating: "The Creditor, by filing the state court case in August, 2015, violated the discharge injunction, albeit unawares of the bankruptcy discharge of the underlying debt." Debtor's First Amended Motion at 6.

20. On or about October 15, 2015, Creditor filed an Objection to Defendant's [Debtor's] Notice of Stay of Proceedings; Memorandum of Points and Authorities in Support Thereof, in the State Court Action.  Exhibit 4 to Debtor's First Amended Motion; *Trial Testimony of John H. Oh*, August 11, 2016 at 10:22 a.m.  In this Objection, Creditor argued: "Plaintiff hereby objects to Defendant's Notice of Stay of Proceedings, on the ground that the said notice doesn't apply to the case at bar, The automatic stay was terminated when the Defendant was discharged in October 18, 2011 and case was closed on October 25, 2011.  (11 US Code § 362.)" *Id.*  On December 21, 2015, the state court filed a Notice of Ruling re: Objection to Defendant's Stay of Proceeding, stating:  "The Court ruled as follows:  1.  Stay is lifted.  Bankruptcy filing of Defendant was in 2011 and was discharged in 2011. . . ."  Notice of Ruling re: Ojbection to Defendant's Stay of Proceeding, State Court Action, Exhibit E to Creditor's Notice of Opposition and Request for Hearing; Opposition to Debtor's Motion to Reopen Chapter 7 Bankruptcy Case for Violation of Discharge Order and for Sanctions; Declaration of John H. Oh, ECF 27, filed on February 10, 2016.

21. On or about January 8, 2016, John H. Oh, counsel for Creditor, filed a request for entry of default against Debtor in the State Court Action.  Exhibit 10 to Debtor's First Amended Motion; *Trial Testimony of John H. Oh*, August 11, 2016 at 10:22-10:23

a.m.  On or about January 28, 2016, default was entered against Debtor in the State Court Action.  *Id.*

22. On March 8, 2016, Jaenam Coe, counsel for Debtor, sent a letter by fax and mail to John H. Oh, counsel for Creditor, advising that Debtor had obtained an order reopening this bankruptcy case and that Debtor intended to file a motion for sanctions against Creditor and his counsel unless Creditor voluntarily dismissed the State Court Action on the grounds that the State Court Action violated the discharge injunction and the automatic stay in the bankruptcy case.  Exhibit 7 to Debtor's First Amended Motion.

23. On March 11, 2016, John H. Oh, counsel for Creditor, sent a letter by fax and mail to Jaenam Coe, counsel for Debtor, as a "meet and confer" reply letter in response to the letter of counsel for Debtor requesting that Creditor voluntarily dismiss the State Court Action, stating that the bankruptcy discharge did not apply to an agreement made by Debtor after the discharge to repay the prepetition loan debt.  Exhibit 8 to Debtor's First Amended Motion.

24. Between March 11 and 16, 2016, Jaenam Coe, counsel for Debtor, and John H. Oh, counsel for Creditor, exchanged email messages regarding Debtor's request to meet and confer before Debtor filed a motion seeking sanctions for violation of the discharge injunction.  Exhibits 5 and 6 to Debtor's First Amended Motion.  Debtor's counsel requested that Creditor dismiss the State Court Action on grounds that the action violated the discharge injunction in seeking to collect a prepetition debt from Creditor's loan to Debtor, and Creditor's counsel disagreed on grounds that Debtor had made postpetition promises to pay the loan debt, thus reaffirming the debt.  *Id.*

## **CONCLUSIONS OF LAW**

1. This contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure was initiated by the motion of Debtor to enforce the discharge injunction, which alleges a claim for relief under 11 U.S.C. § 524(a)(2).

9

2.  The claim is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), and this

court has jurisdiction over the claim pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.

3.  11 U.S.C. § 727 "provides a general rule for determining when it is appropriate to

discharge the [individual] pre-petition debts." *In re Biggar,* 110 F.3d 685, 687 (9th

Cir. 1997), *citing,* 11 U.S.C. § 727.  "All of the debtor's pre-petition debts, save

those listed in [11 U.S.C.] § 523, are discharged in a Chapter 7 proceeding." *Id.*;

*see also,* 4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶

22:830 at 22-112 (2015) ("Chapter 7 discharge relieves an individual debtor from

personal liability for all debts that arose before the date of the order for relief under

Chapter 7, except for those debts that are nondischargeable.", *citing,* 11 U.S.C. §

727(b) and *In re Biggar, supra.*  11 U.S.C. § 523 list certain types of debts that are

not discharged, even if a discharge is appropriate under 11 U.S.C. § 727.  *In re

Biggar,* 110 F.3d at 687, *citing,* 11 U.S.C. § 523(a).

4.  The debt of Debtor for the prepetition loan made by Creditor is not one of the types

of debts that is nondischargeable under 11 U.S.C. § 523, including certain debts

which are not listed on debtor's bankruptcy schedules under 11 U.S.C. §

523(a)(3)(A), because the loan debt does not involve fraud and this bankruptcy

case is a "no asset, no bar date" Chapter 7 case.  *In re Nielsen,* 383 F.3d 922, 927

(9th Cir. 2004).  Thus, the prepetition loan debt of Debtor to Creditor is subject to

discharge in this case.

5.  Creditor argues that the loan debt is excepted from discharge due to Debtor's

postpetition agreement to repay the debt and because Debtor made voluntary

postpetition payments on the debt.  "Notwithstanding this prohibition against the

collection of discharged debts, [11 U.S.C.] § 524 provides that a debtor may repay

debts that would otherwise be dischargeable, either by entering into a formal

reaffirmation agreement, *see* 11 U.S.C. § 524(c) and (d), or by making voluntary

payments in the absence of such an agreement.  *See* 11 U.S.C. § 524(f)."  *In re Hudson,* 168 B.R. 368, 371 (Bankr. S.D. Ill. 1994).

6. Creditor's argument that Debtor made a valid postpetition agreement to reaffirm the loan debt lacks merit because the only valid way to reaffirm a prepetition debt by an agreement is through a reaffirmation agreement that complies with 11 U.S.C. § 524(c).  *See, e.g., In re Motley,* 268 B.R. 237, 243 (Bankr. C.D. Cal. 2001).   One of the requirements of 11 U.S.C. § 524(c) is that the reaffirmation agreement has been filed with the bankruptcy court no later than 60 days after the first date set for the meeting of creditors under 11 U.S.C. § 341(a) unless time is extended by the court. Here, there is no evidence that any reaffirmation agreement for the loan debt meeting the requirements of 11 U.S.C. § 524(c) was timely filed with this court. Thus, Creditor's argument based on a postpetition agreement to reaffirm the prepetition loan debt as an exception to discharge must be rejected.

7. However, Creditor's alternative argument that the payments he collected on the debt are excepted from discharge as voluntary payments made by Debtor under 11 U.S.C. § 524(f) does have merit.  11 U.S.C. § 524(f) provides: "Nothing contained in subsection (c) or (d) of this section [requiring court approval of reaffirmation agreements] prevents a debtor from voluntarily repaying any debt."  *In re Hudson,* 168 B.R. at 371, *quoting,* 11 U.S.C. § 524(f).  "Congress has provided little guidance on the meaning of voluntary repayment under § 524(f)."  *Id.; see also, DuBois v. Ford Motor Credit Co.,* 276 F.3d 1019, 1022-1023 (8th Cir. 2002); 4 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 524.06 at 524-59 (16th ed. 2016). As *Collier on Bankruptcy* notes, "Occasionally, courts will have to decide whether payments on a discharged debt were truly voluntary.  For example, if a payment is made as a result of pressure or coercion, it is not made voluntarily in the sense of section 524(f)." 4 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 524.06 at 524-59, *citing inter alia, Matter of Arnold,* 206 B.R. 560, 566-567 (Bankr. N.D. Ala. 1997).  In

determining whether a debtor's payments of a discharged debt were voluntary within the meaning of 11 U.S.C. § 524(f), the court finds it useful to look at the totality of the circumstances regarding the repayments of the debt. *See, e.g., Matter of Arnold,* 206 B.R. at 566-567.

8.  As discussed herein, the evidence of the totality of the circumstances of this matter shows that the payments were made voluntarily by Debtor.  Debtor in his direct testimony received at trial in his declaration in support of Debtor's First Amended Motion contended that Creditor had been collecting payments for the loan after discharge "quite forcefully against my will" in that Creditor "constantly demanded payment and even sent some man claiming to be a 'collector' to our church" and that Creditor has harassed him, "including disparaging remarks made to me and my acquaintances, as well as my congregation – all for the purposes of collecting money from me." Declaration of John J. Suh at 1, Debtor's First Amended Motion. Creditor in his declaration in opposition to the Motion denied these allegations, but Creditor's declaration was not received into evidence at trial as he did not appear at trial.  Declaration of Creditor Benjamin Park in Opposition to Debtor John Chun Suh's Declaration in Support of Why Creditor Should Not Be Held in Contempt, ECF 40, filed on May 10, 2016.  The court finds that Debtor's testimony that all of the payments that he made to Creditor before the State Court Action were not voluntary is not credible.  It is undisputed that Debtor borrowed a loan of $50,000 from Creditor before Debtor filed his bankruptcy case in 2011.  Debtor was thus aware of his prepetition debt to Creditor, but did not list the debt or Creditor on his bankruptcy petition and schedules filed in the bankruptcy case despite this knowledge and his legal duty as a bankruptcy debtor to file accurate and complete bankruptcy schedules listing all assets, debts and creditors. 11 U.S.C. § 521(a)(1)(B) (stating that the debtor must file a schedule of assets and liabilities "unless the court orders otherwise"); Federal Rule of Bankruptcy Procedure 1008

("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration [under penalty of perjury] as provided in 28 U.S.C. § 1746."); *In re Rolland,* 317 B.R. 402, 414 (Bankr. C.D. Cal. 2004) ("Schedules and statements are signed under penalty of perjury."), *citing,* Federal Rule of Bankruptcy Procedure 1008; *see also,* 4 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 521.03[2] at 521-14 and n. 16 ("The debtor has a duty to prepare schedules carefully, completely and accurately."), *citing, Cusano v. Klein,* 264 F.3d 936 (9th Cir. 2001). Debtor's debt to Creditor for the prepetition loan should have been disclosed, and Creditor should have been identified, on Debtor's Schedule F, Creditors Holding Unsecured Nonpriority Claims. Petition, Schedule F, ECF 1. On his original Schedule F filed with his bankruptcy petition, Debtor did not list any debts or creditors holding unsecured nonpriority claims, leaving the schedule blank. *Id.* Debtor later filed an amendment to the list of creditors to add secured creditor Morgan Stanley to the list of creditors and also filed an amended Schedule F, listing 29 other creditors holding unsecured nonpriority claims, including lenders, but Debtor did not list Creditor as one of them. Amendment to List of Creditors, ECF 16, filed on August 30, 2011; Amended Schedules, ECF 17, filed on September 28, 2011. There is no reasonable explanation why Debtor did not list Creditor and the debt he owed to Creditor on his bankruptcy schedules as was his legal duty. From these circumstances, the court infers that Debtor intentionally omitted Creditor from his bankruptcy schedules because he wanted to continue to pay his prepetition loan debt to Creditor postpetition, which is evidence that some, if not all, of the postpetition payments made on the prepetition loan debt to Creditor were voluntary payments. Moreover, Debtor admits that Creditor had no knowledge of this bankruptcy case and Debtor's discharge until Debtor filed his Notice of Stay of Proceedings in September 2015. While Creditor did not know of the bankruptcy case and discharge, Debtor knew of the bankruptcy case and discharge as he

signed the bankruptcy petition, filed the bankruptcy case, and received notice of the

discharge when the court entered the discharge, but when these events occurred,

Debtor chose not to share his knowledge with Creditor during the time that he made

the payments on the prepetition loan debt he owed to Creditor as evidenced by

copies of the payment checks constituting Exhibit 2 to Debtor's First Amended

Motion, which showed that the payment checks were dated in 2012 and negotiated

in 2013.  In his trial testimony, Debtor contends that he made a mistake in making

payments on a discharged debt: "I have been making payments after the discharge

of my bankruptcy because I did not understand that even if I did not list the Loan it

was discharged so long as it was a pre-petition debt."  Declaration of John J. Suh at

2, Debtor's First Amended Motion.  Debtor's repayment of a discharged debt based

on a mistaken belief formed independently of action by Creditor that the debt was

still owing does not negate the voluntary nature of Debtor's repayment of the

discharged debt under 11 U.S.C. § 524(f).  *In re Hudson,* 168 B.R. at 371-372.  The

court in *In re Hudson* held as much because the debtors in that case similarly

repaid a discharged debt based on the mistaken belief that they thought the debt

was still owing without any inducement or other collection action by the creditor.  *Id.*

at 371-373.

9.    In this case, the court finds that there was no inducement or other collection action

by Creditor until he filed the State Court Action in 2015 to demonstrate that Debtor's

repayments made in 2012 and 2013 were involuntary and further finds that these

repayments were voluntary for purposes of 11 U.S.C. § 524(f).  Debtor in his trial

testimony made statements that Creditor undertook collection action to coerce

payments of the debt from him (i.e., Creditor "has been collecting payments for the

loan after the discharge of my Bankruptcy, quite forcefully against my will").

Declaration of John J. Suh at 1-2, Debtor's First Amended Motion.  The court gives

no credence to Debtor's contentions in his trial testimony that Creditor undertook

coercive collection against him to render his debt repayments in 2012 and 2013

involuntary because the testimony lacked any detail regarding specific incidents of

coercion or harassment and is uncorroborated by the testimony of any other

witness or any documentary evidence, and the totality of the circumstances indicate

otherwise, particularly, Debtor's intentional omission of Creditor and the loan debt

from his bankruptcy schedules in violation of his duty to disclose fully, accurately

and completely his financial affairs, including his debts and creditors. *See, In re

Rolland,* 317 B.R. 402, 413 ("Full and comprehensive disclosure is critical to the

integrity of the bankruptcy process.")(citation omitted).  Accordingly, based on the

totality of the circumstances and for the reasons previously discussed, the court

finds that the postpetition payments made by Debtor to Creditor on the discharged

loan were voluntary.

10.  Regarding Debtor's request that the court find Creditor in civil contempt, the court

begins with 11 U.S.C. § 524(a), which provides in pertinent part:

> A discharge in a case under this title—(1) voids any judgment at any
> time obtained, to the extent that such judgment is a determination of
> the personal liability of the debtor with respect to any debt discharged
> under section 727, 944, 1141, 1228, or 1328 of this title, whether or not
> discharge of such debt is waived; (2) operates as an injunction against
> the commencement or continuation of an action, the employment of
> process, or an act to collect, recover or offset any such debt as a
> personal liability of the debtor, whether or not discharge of such debt is
> waived. . . .

11.  The discharge injunction pursuant to 11 U.S.C. § 524(a) may be enforced by the

court's contempt power under 11 U.S.C. § 105(a).  *In re Bennett,* 298 F.3d 1059,

1069 (9th Cir. 2002) (citations omitted).

12.  The standard for finding a party in civil contempt is as follows:

> The moving party has the burden of showing by clear and convincing
> evidence that the contemnor violated a specific and definite order of
> the court.  The burden then shifts to the contemnors to demonstrate
> why they were unable to comply. . . . [T]o justify sanctions, the movant
> must prove that the creditor (1) knew the discharge injunction was
> applicable and (2) intended the actions which violated the injunction.

15

*In re Bennett*, 298 F.3d at 1069 (citations omitted).

13. In this contested matter for civil contempt, Debtor as the moving party has the burden of showing by clear and convincing evidence that Creditor knew that the discharge injunction was applicable and intended the actions that violated the discharge injunction.

14. Based on the evidence admitted at trial, the court finds that Debtor has not met his burden of proving a claim under 11 U.S.C. § 524(a)(2) as to the time period before Debtor filed the Notice of Stay of Proceedings in the State Court Action on September 17, 2015 because Debtor has not shown by clear and convincing evidence that Creditor and his attorney knew the discharge injunction was applicable before that date and that Creditor intended the actions that violated the discharge injunction.

15. In this regard, the court does not find Debtor's testimony that Creditor and his attorney knew that the discharge injunction was applicable before they filed the State Court Action to collect the debt owed by Debtor to Creditor for the prepetition loan and before Debtor filed the Notice of Stay of Proceedings in that case to be credible.  First, Debtor admitted in his First Amended Motion for contempt that Creditor did not learn of the bankruptcy case and discharge until Debtor filed the Notice of Stay on September 17, 2015.  Second, Debtor did not list Creditor or the loan debt on his bankruptcy petition and schedules filed in this bankruptcy case, which indicates that notice of the bankruptcy case and discharge was not given to Creditor and supports Creditor's contention that he did not know of the bankruptcy case and discharge.  Third, Debtor's testimony that he told Creditor of his bankruptcy case and discharge before the filing of the Notice of Stay of Proceedings in the State Court Action is not corroborated by other evidence, such as other documents or testimony of other witnesses, and the court, having heard Debtor's testimony not corroborated by other evidence, does not find Debtor's testimony on this point to be credible.

16. Based on the evidence admitted at trial, the court finds that Debtor has met his burden of proving a claim under 11 U.S.C. § 524(a)(2) as to the time period after Debtor filed the Notice of Stay of Proceedings in the State Court Action on September 17, 2015 because Debtor has shown by clear and convincing evidence that Creditor and his attorney knew the discharge injunction was applicable once Debtor filed the Notice of Stay of Proceedings and that they intended the actions that violated the discharge injunction.  Although the first page of the Notice of Stay of Proceedings incorrectly alleged that the State Court Action should be stayed because of the automatic stay, which is incorrect as a matter of law because the automatic stay terminated when the discharge was entered in Debtor's bankruptcy case, 11 U.S.C. § 362(c)(2)(C), the court determines that Creditor and his attorney knew the discharge injunction was applicable on or around September 17, 2015 because attached to the Notice of Stay of Proceedings was a copy of the Discharge of Debtor.  Specifically, the court finds that the acts of Creditor and Creditor's Counsel of filing the request for entry of default against Debtor in the State Court Action on January 8, 2016 and related proceedings resulted in the entry of default against Debtor in the State Court Action listed on the State Court Action case docket, Exhibit 10 to Debtor's First Amended Motion, were intentional acts that violated the discharge injunction under 11 U.S.C. § 524(a)(2) because the filing of the request for entry of default and related acts to perfect the entry of default against Debtor in the State Court Action constituted the continuation of acts to collect a discharged debt as a personal liability of Debtor.  Once Creditor and Creditor's Counsel had notice of the bankruptcy case and discharge as of September 17, 2015, they had to cease any further efforts to collect the discharged prepetition loan debt, or otherwise, they would be in contempt of court for violating the discharge injunction.  Accordingly, the court finds that Creditor and Creditor's Counsel are in civil contempt in violation of the discharge injunction in this case for the actions described herein.

17.   The bankruptcy court is authorized to issue "any order, process, or judgment" necessary or appropriate to carry out the provisions of the Bankruptcy Code under 11 U.S.C. 105(a), such as the discharge injunction under 11 U.S.C. § 524(a)(2). Thus, it is appropriate to issue an order granting Debtor declaratory relief that further actions to collect the remaining portions of the discharged prepetition loan debt owed by Debtor to Creditor are enjoined pursuant to the discharge injunction under 11 U.S.C. § 524(a)(2) and injunctive relief directing Creditor to dismiss the State Court Action against Debtor to collect the discharged prepetition loan debt.

18.   Counsel for Debtor, through Debtor's First Amended Motion, also requests attorney's fees and costs for the work Counsel for Debtor incurred after filing the Notice of Stay of Proceedings on September 17, 2015 in the State Court Action. Since the bankruptcy court is authorized to issue "any order, process, or judgment" necessary or appropriate to carry out the provisions of the Bankruptcy Code under 11 U.S.C. 105(a), the court may order the creditor to pay the aggrieved debtor compensatory damages, plus attorneys' fees and costs, as sanctions for violating the discharge injunction under 11 U.S.C. § 524(a)(2).  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 22:112 at 22-15 (2015), *citing, Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) and *Sciarrino v. Mendoza,* 201 B.R. 541, 547 (E.D. Cal. 1996) (bankruptcy court's award of attorneys' fees and costs for discharge injunction violation affirmed).

19.   Nevertheless, any award of attorneys' fees and costs here would be subject to a standard of reasonableness, and to determine that the claimed fees and expenses are reasonable, the court reviewed each and every billing and cost entry set forth in Exhibit 9 of Debtor's First Amended Motion for the claimed attorneys' fees and expenses.  Debtor claims reimbursement of attorneys' fees and expenses for services performed by Counsel for Debtor who billed 38.3 hours at $400.00 an hour for a total of $15,320.00 and expenses of $79.50, which add up to a grand total of $15,399.50.  Debtor's First Amended Motion at 8-10 and Exhibit 9 attached thereto.

20. Having carefully considered Debtor's request for an award of attorneys' fees and
costs and the supporting, billing statements submitted by Debtor's Counsel, the
court determines that the claimed attorneys' fees and costs are inflated and must
be reduced to a reasonable amount.

21. The court addresses the billing and cost entries as follows:  (a) 3.2 hours (2.0 hours
on 1/11/16 and 1.2 hours on 1/25/16) at $400.00 per hour for a total of $1,280.00 is
claimed for review of Creditor's Counsel objection re stay based on the discharge in
the State Court case, review of the status in the State Court case file and to review
the state court's ruling on the stay proceeding notice.  Creditor's objection to
Debtor's Notice of Stay of Proceedings and review of the status of the state court
case should not have taken very long since the pleadings are few in number (i.e.,
summons and complaint, Debtor's notice of stay of proceedings and Creditor's
objection thereto, and Creditor's two requests for entry of default, Exhibit 10 to
Debtor's First Amended Motion, State Court Case Docket), not very long and
simple in content (i.e., Creditor is suing to collect the loan debt from Debtor, and the
state court agreed with Creditor that the stay was lifted from the discharge in the
bankruptcy case), including the 6-page objection to the notice of stay (Exhibit 4 to
Debtor's First Amended Motion) and the 2-page state court's ruling on the notice of
stay of proceedings.  The court determines that 1.0 hour at $400.00 per hour for a
total of $400.00 is the reasonable amount for these tasks.  (b)  8.0 hours (1.0 hour
on 1/12/16, 4.0 hours on 2/2/16, 1.0 hour on 2/11/16, 2.0 hours on 2/16/16 and 1.0
hour on 3/7/16) at $400.00 per hour for a total of $3,200.00 for proceedings relating
to work on Debtor's motion to reopen the bankruptcy case, which is a simple task,
to request the court to undertake the ministerial task of administratively reopening
the case for litigation to proceed, but counsel for Debtor made a simple task into a
complex one by integrating the merits of his motion for an order to show cause re:
contempt into the motion to dismiss and noticing the motion to reopen for hearing in
disregard of the local rules as noted by the court in its order on the motion to open

the case, which directed counsel for Debtor to file a remedial response that he has read and understood the local rule on motion to reopen which he did not follow in the first instance.  *See* Order Granting Debtor's Motion to Reopen Chapter 7 Bankruptcy Case, ECF 29, filed and entered on March 4, 2016.  A motion to reopen is a simple task which requests that the court reopen the case administratively to allow a party, here, Debtor, to proceed with further litigation in the bankruptcy case, which should have taken no more than 2.0 hours here, including reviewing any response thereto and the court's ruling and preparing counsel's remedial declaration.  It should not have taken counsel for Debtor 3.0 hours to prepare the motion, 3.0 hours to read and respond to the opposition and 2.0 hours to read the court's ruling and file the remedial declaration, and counsel should not be compensated for doing unnecessary work due to his failure to comply with the local rules.  The court will allow 2.0 hours at $400.00 per hour for a total of $800.00 as reasonable for these tasks. (c) 3.7 hours (0.4 hour on 3/7/16, 0.6 hour on 3/8/16, 1.3 hours on 3/11/16, 0.2 hour on 3/15/16, and 1.2 hours on 3/21/16) for a total of $1,480.00 claimed for the time spent by counsel for Debtor communicating with counsel for Creditor requesting voluntary dismissal of the State Court case and conferring regarding possible settlement of the dispute re: contempt before proceeding with litigation. The record of communications between counsel indicate exchanges of brief emails, letters and telephone conversations, and the claimed 3.7 hours at $400.00 an hour is unreasonable; based on the court's review, 1.2 hours at $400.00 per hour for a total of $480.00 is reasonable for these tasks.  (d)  16.1 hours (0.6 hour on 3/8/16, 1.0 hour on 3/15/16, 4.0 hours on 3/21/16, 1.0 hour on 3/31/16, 1.5 hours on 4/23/16, 1.0 hour on 4/24/16, 4.0 hours on 5/6/16 and 3.0 hours on 5/9/16) at $400.00 per hour for a total of $6,440 claimed for the time spent by counsel for Debtor in preparing the motion for an order to show cause re: contempt with supporting declarations and memorandum of points and authorities, appearing at the hearing on the order to show cause and reviewing the court's

order to show cause.   Debtor's motion for an order to show cause re: contempt was straightforward here because as Debtor admitted in his moving papers, Creditor did not know of the bankruptcy case and discharge until Debtor filed the Notice of Stay of Proceedings in the State Court Action in September 2015, and Debtor need only show that Creditor failed to stop his collection lawsuit once notice of the bankruptcy case and discharge was given and provide evidence of collection by Creditor of the discharged debt.   However, counsel for Debtor went beyond this relatively simple and straightforward task to demonstrate that Creditor engaged in aggressive debt collection practices which are not contemptuous since Debtor had not put Creditor on notice of the bankruptcy case and discharge when these alleged transgressions took place.   All Debtor needed to provide was evidence of the State Court proceedings and proof of payment of the debts and a brief memorandum of points and authorities regarding the standard for contempt.   The claimed 16.1 hours of attorney time for a total of $6,440.00 is excessive, including 2.5 hours of attorney time to look at minimal bank records consisting of about 20 cancelled checks and 1.0 hour to read the court's order to show cause.   The court will allow 5.0 hours for motion preparation time and 2.0 hours for court appearance time (a hearing of about 20 minutes on 5/10/16, waiting time in court of 25 minutes and 1.0 hour of travel time), or 7.0 hours at $400.00 per hour, for a total of $2,800.00 as reasonable. (e) 5.5 hours (4.0 hours on 5/26/16 and 1.5 hours on 5/31/16) at $400.00 for a total of $2,200.00 claimed for the time spent by counsel for Debtor preparing the amended motion for the order to show cause re: contempt.   Debtor had to amend the original motion for an order to show cause because it was defective in asserting that Creditor "knew of the discharge injunction from the outset," which was not true, and no proof of payment of discharged debt had been submitted with the original motion.   It is unreasonable for Creditor to bear the brunt of correcting these deficiencies which should not have been in the original pleadings by having him pay for the makeover of Debtor's motion.   The court has

already made reasonable allowance for the preparation of, and appearance on, the original motion, and the court should only reasonably allow a portion of the claimed amount to correct Debtor's originally deficient motion.  The claimed amount of $2,200.00 for 5.5 hours is unreasonable.  The court will allow 2.0 hours at $400.00 per hour as the reasonable amount of attorneys' fees and expenses to be allowed for the amended motion, for a total of $800.00 as reasonable.  (f) The court will also allow 3.0 hours at $400.00 per hour for a total of $1,200.00 for the appearance of counsel for Debtor at the final hearing in this contested matter on August 11, 2016 (2.0 hours of hearing time and 1.0 hour of travel time), which is not set forth on the billing statement in Exhibit 9 to Debtor's First Amended Motion.  Counsel for Debtor expended this time at the hearing and should be reasonably compensated for such time.  (g) The court will also allow the claimed expenses of $79.50 for postage, copying costs and parking for counsel at the first hearing, although no breakdown of these costs are given, but it appears that the amount claimed is reasonable based on the court's review of the pleadings on the docket and having seen counsel at the hearing.  The court will also allow the claim for the cost of $358.00 for the Korean interpreter at trial, Interpreter's Invoice, ECF 47, filed on August 17, 2016, as reasonable because Debtor is not sufficiently fluent in English to have given his testimony in English and needed the assistance of a Korean interpreter to present his testimony.

22. Accordingly, the court determines that under 11 U.S.C. §§ 105(a) and 524(a)(2), Counsel for Debtor should be awarded $6,917.50 in attorney's fees and costs from Creditor Benjamin Park and Counsel for Creditor, John Oh, jointly and severally.

23. Debtor also urges that the court award him additional sanctions against Creditor "to compensate the debtor for the suffering that the Creditor caused over the years through his collection activities against the law, which sum is suggested to be $20,000."  Reply to Opposition to Debtor's Amended Motion for Order to Show Cause, ECF 45, filed on July 29, 2016, at 3.  It is unclear to the court whether this

request is for compensatory damages for emotional distress or for punitive

damages.  Some courts have allowed damages for emotional distress for discharge

injunction violations.  *See,* 4 March, Ahart and Shapiro, *California Practice Guide:*

*Bankruptcy,* ¶ 22:113.2 at 22-15, *citing, In re Nebblink*, 403 B.R. 113, 120-121

(Bankr. D. Md. 2009) (collecting cases).  Some courts have made awards of

punitive damages as sanctions for violating the discharge injunction while other

courts have held punitive damages are legally not awardable as sanctions for

violating the discharge injunction.   4 March, Ahart and Shapiro, *California Practice*

*Guide: Bankruptcy,* ¶ 22:114 at 22-15, *citing, In re Breul*, 533 B.R. 782, 797 (Bankr.

C.D. Cal. 2015) (awarding punitive damages); *In re Henry,* 266 B.R. 457, 481

(Bankr. C.D. Cal. 2001) (same); *In re Cherry,* 247 B.R. 176, 187 (Bankr. E.D. Va.

2000) (collecting cases but declining to award punitive damages under facts of

case); *In re Wagner,* 87 B.R. 612, 619 (Bankr. C.D. Cal. 1988) (not allowing

punitive damages); *see also, In re Zartun,* 30 B.R. 543, 546 (9th Cir. BAP 1983)

(damages may be awarded ancillary to contempt order "so long as they are not

punitive").  Regardless of whether emotional distress damages and punitive

damages are legally awardable by this court for contempt in violating the discharge

injunction, the court declines to award such additional sanctions to Debtor under the

facts of this case.  The evidence in this case indicates that Creditor pursued

collection activity against Debtor without knowledge of this bankruptcy case

because Debtor borrowed the $50,000 from Creditor prepetition, Debtor did not list

Creditor or the loan debt on his bankruptcy petition and schedules, and thus,

Creditor never received any notice of the bankruptcy case while it was pending,

including the notice of discharge, Debtor agreed to repay the loan debt postpetition

without notifying Creditor of the bankruptcy case and discharge, and Debtor never

told Creditor of the bankruptcy case and discharge until Creditor filed the State

Court Action in 2015, leading Debtor's counsel to file the Notice of Stay of

Proceedings.  The court doubts that Debtor felt any emotional distress when he

made the postpetition payments of the discharged prepetition loan debt to Creditor

because as discussed herein, Debtor's payments were voluntary because he

wanted to make the payments.  The court acknowledges that Debtor must have felt

some distress when Creditor sued him for nonpayment of the outstanding loan debt

in the State Court Action, but it is really Debtor's own fault rather than Creditor's if

Debtor felt any distress from Creditor's state court lawsuit to collect the loan debt

that Debtor reneged in paying since Debtor kept the knowledge of the bankruptcy

case and discharge to himself until then.  Moreover, the court  finds Debtor's

testimony that he felt actionable emotional distress warranting compensatory

damages not to be credible, and the court's credibility finding is in large part

because such testimony is uncorroborated by any other witness, expert or

otherwise.  Debtor did not call any percipient witnesses to corroborate his claims of

creditor harassment, nor did he offer the testimony of any medical expert witness to

corroborate his claims of emotional distress.  Creditor through counsel had

responded to Debtor's Notice of Stay of Proceedings by filing the objection in the

state court, and the state court apparently agreed with Creditor by ruling the State

Court Action was not stayed and could proceed.  While the state court's ruling that

the State Court Action to enforce the discharged prepetition loan debt could

proceed was erroneous in light of the discharge injunction, the reliance of Creditor

and his counsel on the state court's ruling and the fact that they did not get far in

the State Court Action only to entry of default with no further collection along with

Debtor's long and willful silence about his bankruptcy case and discharge to

Creditor mitigate their actions in violation of the discharge injunction such that the

requested additional sanctions are not warranted.  These circumstances do not

warrant the imposition of punitive damages, even if the court had ruled that punitive

damages may be legally awarded by a bankruptcy court, which is an issue which the court does not decide now.

24. Finally, at the trial, the parties stipulated to the court determining any claim for turnover of payments of the loan debt if the court determines that such payments were collected in violation of the discharge injunction.  "Awardable compensatory damages [to a bankruptcy debtor] include any payments obtained by the creditor violation of the [discharge] injunction, together with interest thereon."  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 22:113 at 22-15, *citing, In re Kendrick*, 75 B.R. 451, 456 (Bankr. N.D. Ga. 1987) and *In re Brantley,* 116 B.R. 443, 447-448 (Bankr. D. Md. 1990).  The evidence before the court is that Creditor collected payments on the discharged prepetition loan debt as shown by the copies of the cancelled checks showing payments to Creditor in 2012 and 2013 after the discharge was entered.  The question is whether the payments of the discharged prepetition loan debt were voluntary repayments by Debtor not in violation of the discharge injunction under 11 U.S.C. § 524(f).  As discussed above, the court finds that Debtor's postpetition repayments of the discharged prepetition loan debt owed to Creditor as evidenced by the copies of the cancelled checks in Exhibit 2 to Debtor's First Amended Motion, the only evidence of postpetition collection of the loan debt in evidence, were voluntary within the meaning of 11 U.S.C. § 524(f), and thus, were not collected in violation of the discharge injunction to warrant turnover as compensatory damages to Debtor.  Accordingly, Debtor's request for turnover of his postpetition loan repayments from Creditor should be denied.

25. Regarding the granting of declaratory and injunctive relief in favor of Debtor as to further efforts by Creditor to collect the discharged prepetition loan debt and the award of attorneys' fees and costs in favor of Debtor and against Creditor and Counsel for Creditor, Counsel for Debtor is ordered to submit a proposed final order

consistent with these findings of fact and conclusions of law, within 14 days of entry
of these findings of fact and conclusions of law.

26. Regarding the denial of turnover relief, Counsel for Creditor is ordered to submit a
proposed final order consistent with these findings of fact and conclusions of law
within 14 days of entry of these findings of fact and conclusions of law.

**IT IS SO ORDERED.**

### ###

Date: December 8, 2016

_____
Robert Kwan
United States Bankruptcy Judge